IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ERIN L. MASON, | CASE NO. 3:20-CV-02013-JGC |
| Plaintiff, | JUDGE JAMES G.CARR |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION |
| Defendant. | |

### INTRODUCTION

Plaintiff Erin L. Mason filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB"). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On September 9, 2020, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a report and recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 20, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Ms. Mason filed for DIB on February 8, 2018, alleging a disability onset date of August 21, 2013. (Tr. 177). Her claims were denied initially and on reconsideration. (Tr. 79-92, 94-108). She then requested a hearing before an administrative law judge. (Tr. 121-22). Ms. Mason (represented

1

by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on May 21, 2019. (Tr. 39-78).

On August 8, 2019, the ALJ issued a written decision finding Ms. Mason not disabled. (Tr. 12-38). The Appeals Council denied Ms. Mason's request for review on July 8, 2020, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 404.955, 404.981). Ms. Mason timely filed this action on September 8, 2020. (ECF #1).

## FACTUAL BACKGROUND

### I. ADMINISTRATIVE HEARING

The following summarizes the testimony of Ms. Mason and VE James Breen, presented during the hearing before the ALJ.

Ms. Mason amended her alleged onset date to November 22, 2017. (Tr. 43). Ms. Mason has worked as a flagger, a rubber molding machine operator, an inventory inspector, and a straight inspector. (Tr. 56). Ms. Mason testified she lives with her husband and five-year-old daughter. (Tr. 57). She has a driver's license but will not drive at night. (Tr. 57). Ms. Mason has vision related issues, like floaters, and an unidentified autoimmune disease. (Tr. 59-60). Ms. Mason also has back pain and headaches. (Tr. 60, 61).

She takes methotrexate to decrease her white blood cell count and other medications for her headaches, including Topamax, Pamelor, and nortriptyline, which allow her to function on a daily basis but do not completely resolve the pain. (Tr. 60-61). Noise and lights make her headaches worse. (Tr. 66). Ms. Mason also has psoriasis that causes her to break out in rashes when she is stressed. She takes Humira to lessen the effects of psoriasis and to decrease

inflammation in her spine. (Tr. 63-64). Ms. Mason has depression and anxiety, for which medication is effective. (Tr. 64).

Ms. Mason likes to play board games with her daughter. (Tr. 68-69). She does not do a lot of reading because it makes her headaches worse. (Tr. 69). She is able to help her daughter with some homework because the large text does not bother her. (Tr. 69). Ms. Mason and her husband handle the finances together. (Tr. 69). Ms. Mason is able to do household chores most of the time and is able to go grocery shopping unless she has an extreme headache. (Tr. 67, 68). About twice a week, her headaches are severe enough to prevent her from doing anything around the house. (Tr. 67). When Ms. Mason has a headache, she still gets up to take her daughter to school, but comes home immediately, takes her medication, and lays back down in a quiet, dark room for at least three hours. (Tr. 67). About a week before the hearing, Ms. Mason saw her doctor about her headaches and they discussed Botox injections. (Tr. 68).

Ms. Mason endorses side effects from methotrexate and Humira. (Tr. 69). She takes both medications by self-injection, methotrexate every Sunday and Humira every other Sunday. (Tr. 71). Methotrexate leaves her "extremely exhausted" and feeling very crummy for two days after the injection. (Tr. 69). Along with exhaustion, she usually has a headache and an upset stomach. (Tr. 69). Humira also saps her energy. (Tr. 69).

James Breen, the VE, then testified. The ALJ posed the following hypothetical individual and asked the VE if such an individual could perform Ms. Mason's past relevant work: an individual of Ms. Mason's age, education, and work history who can perform less than the full range of light work; can never climb ropes, ladders, or scaffolds; can frequently climb ramps and stairs, balance, crouch, kneel, stoop, and crawl; can have occasional exposure to extreme cold,

heat, and humidity along with dust, fumes, odors, gases, and other pulmonary irritants; cannot be exposed to more than moderate noise as defined in the Dictionary of Occupational Titles; can occasionally wear dark glasses in the workplace; should avoid all exposure to unprotected heights; cannot perform commercial driving; can understand, remember, and carry out simple, routine, and detailed tasks; can make judgments on simple and detailed work; and can respond appropriately in usual work situations and deal with occasional changes in the work setting. (Tr. 74).

The VE responded that the hypothetical individual would only be able to perform Ms. Mason's past work as an inventory clerk (DOT 222.387-026): semi-skilled, specific vocational preparation ("SVP") 4, medium work per the DOT but light work as Ms. Mason performed it. (Tr. 75). The VE testified such an individual could also perform work as an office helper, a mail sorter, and a cashier, all light, unskilled positions with SVP 2. (*Id.*).

The ALJ asked the VE if an individual under the same restrictions but limited to sedentary work could perform Ms. Mason's past work. (Tr. 75). The VE responded that the limitation to sedentary work would preclude all of Ms. Mason's past work, but such an individual could perform work as a charge account clerk, a circuit board tester, and a costume jewelry maker. (Tr. 75-76).

The VE also testified as to employer tolerances. Employers typically tolerate no more than ten to twelve absences per year and no more than 15% time-off-task outside of regular work breaks. (Tr. 76-77).

II.  **PERSONAL AND VOCATIONAL EVIDENCE**

Ms. Mason was 39 years old at the time of her amended alleged onset date, and 40 years old at the time of the administrative hearing. (Tr. 79, 46). Ms. Mason completed high school. (Tr.

47). Ms. Mason has worked as a flagger, a rubber molding machine operator, an inventory inspector, and a straight inspector. (Tr. 56).

### III.    RELEVANT MEDICAL EVIDENCE[1]

On December 20, 2017, Ms. Mason saw Judy Brenek, APRN-CNP. (Tr. 1241). She complained of headaches, eye pain, and nausea. (*Id.*). Nurse Brenek provided Ms. Mason with an antibiotic for frontal sinusitis. (Tr. 1242).

On February 28, 2018, Ms. Mason saw Trayton Mains, D.O., a rheumatologist, for headaches and back pain. (Tr. 392). Dr. Mains recounted Ms. Mason's history: her headaches began around October 2013, associated with blurred vision and black spots in the right eye. (*Id.*). Her ophthalmologist diagnosed iritis with pressure on the optic nerve. (*Id.*). Dr. Mains noted Ms. Mason's current treatment included methotrexate once weekly, CellCept, Effexor, and Celexa. (*Id.*). Ms. Mason endorsed dry eyes and mouth, fatigue, and hair loss since beginning methotrexate. (*Id.*). As to her lower back, Ms. Mason reported the pain, described as intermittent, localized, and aching, started in her early thirties, and persisted. (*Id.*). She related symptoms being worse in the morning, which were aggravated by prolonged walking and alleviated by laying down. (*Id.*).

Ms. Mason returned to Dr. Mains's office on April 30, 2018. (Tr. 399-405). Ms. Mason endorsed continued headaches. (Tr. 400). Dr. Mains decreased methotrexate and prescribed prednisone for an acute arthritis flare-up. (Tr. 403).

---

[1] Ms. Mason asserts one error–that the ALJ did not appropriately evaluate Dr. Riess's medical source opinion. (*See* Pl.'s Br., ECF #14, PageID 1741). As such, she waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). Dr. Riess treated Ms. Mason for migraines. I therefore summarize the records related to that condition.

Ms. Mason saw Nurse Brenek on May 22, 2018 and complained of a left-sided headache lasting three weeks and associated with left ear pain and sinus pressure on the left side of her face. (Tr. 589). Ms. Mason received Augmentin for acute sinusitis and a referral to neurologist Gerald Riess for the headache. (Tr. 590). Ms. Mason returned to Nurse Brenek on June 5, 2018, where she continued to complain of left-sided headaches associated with light and noise sensitivity and intermittent blurry vision bilaterally but more often in the left eye, and nausea without vomiting. (Tr. 586). She received a prescription for Topamax and instructions to follow up with the office in four weeks. (Tr. 587).

Ms. Mason saw Gerald Riess, M.D., on June 18, 2018. (Tr. 583). Dr. Riess noted a clearly abnormal neurological examination, where Ms. Mason displayed asymmetrical reflexes and hyperreflexia on the right side. Dr. Riess increased Ms. Mason's Topamax and ordered brain and cervical imaging. (Tr. 583).

On June 21, 2018, Ms. Mason returned to Dr. Mains' office, where she displayed hyperreflexia and a continued dilated left pupil that was non-reactive to light. (Tr. 692, 694). For Ms. Mason's headache, Dr. Mains suggested withholding Humira. (Tr. 694).

An MRI of Ms. Mason's cervical spine, dated June 21, 2018, showed minimal degenerative disc disease without central canal or neuroforaminal stenosis. (Tr. 612). A magnetic resonance angiography ("MRA") of the brain revealed slow flow versus diminutive left posterior communicating artery, a finding of doubtful clinical significance. (Tr. 610).

On June 27, 2018, Dr. Riess increased Topamax again, ordered a lumbar puncture, and referred Ms. Mason to an ophthalmologist. (Tr. 580). On July 11, 2018, Dr. Riess prescribed

6

Pamelor and Maxalt MLT for Ms. Mason's headaches. (Tr. 1187). Dr. Riess noted no issues with Ms. Mason's lumbar puncture. (Tr. 1188).

On July 26, 2018, Ms. Mason returned to Dr. Mains' office, where she endorsed continued headaches but noted some improvement. (Tr. 705). Dr. Mains set forth a plan to restart Ms. Mason's Humira self-injections. (Tr. 710). At her follow-up appointment in November 2018, Ms. Mason endorsed restarting her Humira injections a couple months prior. (Tr. 721).

On August 14, 2018, Ms. Mason returned to Dr. Riess's office and reported that her headache symptoms had improved somewhat. (Tr. 1181). Dr. Riess noted that Ms. Mason's headaches and vision problems make it impossible for her to work. (Tr. 118). At her appointment with Dr. Riess in September 2018, Ms. Mason related that her migraines were well-controlled. (Tr. 1175).

On October 13, 2018, Ms. Mason met with Fatoumata Yanoga, M.D., at the Havener Eye Institute Olentangy. (Tr. 1098). Ms. Mason complained of fluctuating blurry vision and constant headaches that had recently worsened. (*Id.*). Ms. Mason returned to Dr. Yanoga on December 3, 2018. (Tr. 1086). She continued to complain of constant, left-sided headaches associated with light and noise sensitivity, but denied nausea and vomiting. (Tr. 1086).

On December 20, 2018, Ms. Mason saw Dr. Riess, where he noted Ms. Mason's headaches were poorly controlled. (Tr. 1163). Dr. Riess increased Pamelor and instructed Ms. Mason to follow up in four weeks. (*Id.*).

In January 2019, Ms. Mason saw Dr. Riess again, who noted her headaches were poorly controlled. (Tr. 1151). In February 2019, Ms. Mason returned to Dr. Riess's office and noted her

7

headaches are under acceptable control with Topamax and Pamelor. (Tr. 1139). Dr. Riess noted if Ms. Mason's headaches worsened, he would consider Botox injections. (*Id.*).

State agency medical consultants reviewed Ms. Mason's medical records at the initial and reconsideration levels. (Tr. 79-92, 94-108). In addition, state agency psychiatric consultants reviewed Ms. Mason's mental health records at both levels. (*Id.*).

At the initial level, the medical consultant determined Ms. Mason had the residual functional capacity to occasionally lift and carry twenty pounds, ten pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to extreme cold, heat, and humidity; and should avoid concentrated exposure to hazards, fumes, odors, dusts, gases, and poor ventilation. (Tr. 87-88).

The psychiatric consultant determined Ms. Mason was moderately limited in her ability to understand and remember detailed instructions and opined Ms. Mason would be able to understand and remember one- to four-step simple and moderately complex instructions. (Tr. 89). Additionally, the psychiatric consultant determined Ms. Mason was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods of time. (*Id.*).

At the reconsideration level, the medical consultant adopted the residual functional capacity assessment except that he found Ms. Mason should avoid all exposure to hazards and dangerous machinery. (Tr. 104). The psychiatric consultant adopted the initial level mental residual functional capacity assessment in full. (Tr. 106).

On March 14, 2018, Ms. Mason underwent a psychological evaluation with Michael J. Wuebker, Ph.D. (Tr. 337-343). Dr. Wuebker provided an assessment of Ms. Mason's abilities and limitations to understand, remember, and carry out instructions; to maintain attention, concentration, persistence, and pace, and to perform simple and multi-step tasks; to respond appropriately to supervision and co-workers in a work setting; and to respond appropriately to work pressures in a work setting. (Tr. 342).

As to Ms. Mason's ability to understand, remember, and carry out instructions, Dr. Wuebker noted Ms. Mason followed directions and instructions during the assessment, appeared to be functioning in the average range of intelligence, and would be expected to understand and apply instructions for one-step and some complex workplace instructions. (*Id.*). Ms. Mason was able to maintain a flow of conversation and demonstrated sufficient attention to answer his questions. He noted Ms. Mason expressed difficulties in maintaining attention and concentration in the workplace but admitted she would complete her work regardless. (*Id.*). Dr. Wuebker did not describe limitations associated with Ms. Mason's ability to respond appropriately to supervision and co-workers. (*Id.*). Ms. Mason expressed a preference for working alone but did not have problems interacting with others at work. (*Id.*). Dr. Wuebker determined Ms. Mason would be capable of responding appropriately to workplace pressures. (*Id.*).

On May 14, 2019, Ms. Mason's neurologist, Dr. Riess, completed a checklist form, prepared by Ms. Mason's counsel, regarding Ms. Mason's migraines and ability to function. (Tr. 1675-76). Dr. Riess noted Ms. Mason suffered from migraines more than once a week, lasting about twenty-four hours, and associated with anorexia, nausea and vomiting, irritability, photophobia, and increased sensitivity to noise. (*Id.*). Dr. Riess concluded Ms. Mason is on

9

aggressive preventive treatment and is not able to work while suffering a headache or on a regular basis. (Tr. 1676).

## THE ALJ'S DECISION

The ALJ's decision, dated August 13, 2019, included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since November 22, 2017, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity; migraine; psoriasis; autoimmune disease; specified depressive disorder; and anxiety disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds and can frequently climb ramps and stairs, balance, crouch, kneel, stoop, and crawl. She can have occasional exposure to extreme cold, heat, and humidity along with dust, fumes, odors, gases, and other pulmonary irritants. She cannot be exposed to more than moderate noise as defined in the Dictionary of Occupational Titles. She can occasionally wear dark glasses in the workplace. She cannot be exposed to unprotected heights. She cannot perform any commercial driving. The claimant can understand, remember, and carry out simple, routine, and detailed tasks, make judgments on simple and detailed work, respond appropriately to usual work situations, and deal with occasional changes in the work setting.

6. The claimant is capable of performing past relevant work as an Inventory Inspection Clerk (DOT #222.387-026), medium exertion as generally performed, light exertion as actually performed, semi-skilled with an SVP of 4. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

> 7. The claimant has not been under a disability, as defined by the Social Security Act, from November 22, 2017, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 17-33).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference.

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner

follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Ms. Mason claims the ALJ improperly evaluated Dr. Riess's medical source opinion. (Pl.'s Br., ECF #14, PageID 1746). She takes issue with the ALJ's characterization of the opinion as "regarding an issue reserved for the Commissioner" and the ALJ's failure to address the entirety of Dr. Riess's opinion. (*Id.*).

13

The Commissioner responds that the challenged statement does not amount to a medical source opinion under the regulations, and thus, does not require an ALJ to evaluate Dr. Riess's statement. (Comm'r's Br., ECF #15, PageID 1761). Even if Dr. Riess's statement was considered a medical opinion, the Commissioner argues the ALJ appropriately evaluated the medical documentation. (*Id.* at PageID 1762). Replying, Ms. Mason concedes Dr. Riess's statement that Ms. Mason is unable to work is not a medical opinion but maintains the ALJ failed to consider Dr. Riess's other opinions that she experienced chronic migraines once a week for twenty-four hours with associated symptoms. (Pl.'s Reply Br., ECF #16, PageID 1771).

Under 20 C.F.R. § 404.1520c, for claims filed on or after March 27, 2017, the ALJ is to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b). The ALJ is not required to defer to or give any specific evidentiary weight to a medical opinion, and is not required to give a treating source controlling weight. *Id.* at § 404.1520c(a). Instead, the ALJ must articulate the consideration given to the medical opinions in the record, grounded in the two "most important factors"—supportability[2] and consistency.[3] *Id.* at § 404.1520c(b). The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or

---

[2] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or prior administrative medical finding(s), the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[3] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

14

restrictions" in the ability to perform physical demands of work activities, to perform mental demands of work activities, to perform other demands of work, and to adapt to environmental conditions. 20 C.F.R. § 404.1513. Judgments about the nature and severity of a claimant's impairments, medical history, diagnosis, treatment prescribed with response, and prognoses are not medical opinions. *Id.*

As noted above, Dr. Riess stated Ms. Mason suffered from migraines more than once a week, lasting about twenty-four hours, and were associated with anorexia, nausea and vomiting, irritability, photophobia, and increased sensitivity to noise, and concluded that Ms. Mason is on aggressive preventive treatment and is not able to work while suffering a headache or on a regular basis. The ALJ addressed Dr. Riess's statement as follows:

> [Ms. Mason's] neurologist, Gerald T. Riess, M.D., indicated the claimant was on aggressive preventative treatment and could not work on a regular basis. This is conclusory, is not persuasive, and is an issue reserved to the Commissioner. Further, Dr. Riess' opinion is not detailed regarding actual function-by-function abilities. Finally, Dr. Riess' own treatment notes show that [Ms. Mason's] headaches are under greater control than this opinion reflects. [Ms. Mason's] headaches were noted to have improved and were "under acceptable control."

(Tr. 30) (internal citations omitted).

I agree with the Commissioner that Dr. Riess's statement does not meet the definition of a medical opinion under § 404.1513(a)(2). Dr. Riess does not state what Ms. Mason can still do despite her headaches, nor does he offer an opinion on the functional limitations posed by Ms. Mason's headaches. Rather, he notes Ms. Mason suffers from migraines at least one day a week for about twenty-four hours, lists her reported symptoms, and declares that she is unable to work while she has a headache, or on any regular basis.

Ms. Mason claims Dr. Riess's statement documenting the type of headache, its frequency, and duration "relates to Ms. Mason's ability to perform or sustain work[,]" and "[i]f an individual

15

is experiencing chronic migraine headaches once a week that last for 24 hours, then the individual would be unable to sustain competitive employment[,]" consistent with the VE's testimony. (Pl.'s Br., ECF 14, PageID 1747). This argument is unavailing. Dr. Riess's statement is merely a regurgitation of Ms. Mason's reported symptoms, not an opinion on the functional limitations posed by her headaches. *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x. 802 (6th Cir. 2011) (a mere regurgitation of a claimant's self-described symptoms is not a medical opinion).

Even if Dr. Riess's statement is considered a medical opinion, the ALJ adequately evaluated it in accordance with the regulations. Despite Ms. Mason's claim to the contrary, the ALJ did not focus solely on Dr. Riess's statement that Ms. Mason cannot work and fail to analyze the rest of the document. (*See* Pl.'s Br., ECF #14, PageID 1748). The ALJ considered Dr. Riess's treatment records and noted that by February 2019, Ms. Mason reported her headaches were acceptably controlled (Tr. 30), which is indeed inconsistent with Dr. Riess's statement that Ms. Mason's headaches are disabling to such a degree she cannot work. Internal inconsistency is a valid consideration when evaluating a medical opinion. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 258 (6th Cir. 2016) ("The ALJ here found that the 2009 report lacked support in objective medical evidence and was internally inconsistent. Thus, the ALJ applied the proper analysis to the 2009 report."); *Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 889 (6th Cir. 2011) ("[T]he ALJ also determined that Deters's opinion was internally inconsistent, which is an independent reason for granting it little weight.").

The ALJ's conclusion is supported by substantial evidence in the record, which the ALJ cited elsewhere in her decision. Ms. Mason experienced fluctuations in the severity of her headaches throughout the relevant period. In July 2018, Ms. Mason reported to her

16

rheumatologist that her headaches had improved. (Tr. 27, 705). Ms. Mason reported the same to Dr. Riess in August 2018 and noted her more severe headaches responded to Maxalt. (Tr. 27, 1181). In September 2018, Dr. Riess noted Ms. Mason's symptoms of migraine headaches were well controlled and that he would maintain her current dose of medication. (Tr. 27, 1175). In December 2018 and January 2019, Dr. Riess noted Ms. Mason's headaches were poorly controlled. (Tr. 27, 1151, 1163). By mid-February, Ms. Mason returned to Dr. Riess's office and reported her headaches had improved and her current medications, Pamelor and Topamax, were adequate treatment. (Tr. 28, 1139).

Ultimately, Ms. Mason has not identified an ALJ error requiring remand. Dr. Riess's statements are not medical opinions that require evaluation in accordance with 20 C.F.R. 404.1520(c). Even if they were, the ALJ's evaluation noted internal inconsistency between Dr. Riess's statements and his treatment notes, and that is a valid and independent reason to find a medical opinion unpersuasive.

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I find there is substantial evidence support to the Commissioner's decision to deny DIB. I therefore recommend the District Court **AFFIRM** the Commissioner's decision.

Dated: December 15, 2021

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).